1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BENJAMIN A.,

                 Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-1847-MLP

ORDER

## I.       INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in evaluating his somatoform disorder and personality disorder. (Dkt. # 8 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.       BACKGROUND

Plaintiff was born in 1984, has a 10th-grade education and additional certification in performance and automotive electronics, and has worked as a receptionist and technician at an auto repair shop. AR at 37, 202. Plaintiff was last gainfully employed in January 2015. *Id*. at 202.

ORDER - 1

1    In January 2017, Plaintiff applied for benefits, alleging disability as of January 30, 2015.

2   AR at 175-81. Plaintiff's application was denied initially and on reconsideration, and Plaintiff

3   requested a hearing. *Id*. at 102-05, 109-12. After the ALJ conducted a hearing on August 10,

4   2018 (*id*. at 33-70), the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 15-28.

5    Utilizing the five-step disability evaluation process,[1] the ALJ found:

6   Step one: Plaintiff has not engaged in substantial gainful activity since January 10, 2017,
    the application date.

7

8   Step two: Plaintiff has the following severe impairments: migraines, obesity, depressive
    disorder, anxiety disorder, and somatic symptom disorder.

9   Step three: These impairments do not meet or equal the requirements of a listed
    impairment.[2]

10

11  Residual Functional Capacity ("RFC"): Plaintiff can perform light work with additional
    limitations: he can never climb ladders, ropes, or scaffolds. He can frequently climb

12  ramps and stairs, stoop, kneel, crouch, and crawl. He cannot have exposure to
    atmospheric conditions or chemicals. He cannot work at unprotected heights or operate

13  heavy equipment but can otherwise have occasional exposure to hazards. He can have
    occasional, superficial interaction with the public, and occasional interaction with

14  co-workers. He can perform tasks without the assistance of others, but occasional
    assistance would be tolerated. Performance of critical elements of the job should not
    require being a member of a team.

15

16  Step four: Plaintiff cannot perform past relevant work.

17  Step five: As there are other jobs that exist in significant numbers in the national
    economy that Plaintiff can perform, Plaintiff is not disabled.

18  AR at 15-28.

19    As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the

20  Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the

21  Commissioner to this Court.

22

23
    _____
    [1] 20 C.F.R. § 416.920.
    [2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

1

### III.    LEGAL STANDARDS

2      Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3  security benefits when the ALJ's findings are based on legal error or not supported by substantial

4  evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a

5  general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

6  ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

7  (cited sources omitted). The Court looks to "the record as a whole to determine whether the error

8  alters the outcome of the case." *Id*.

9      "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

10  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

11  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

12  Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

13  testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

14  1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

15  neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

16  *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one

17  rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

18
### IV.    DISCUSSION

19      As noted by the Commissioner (dkt. # 9 at 1 n.1), Plaintiff's broad identification of the

20  error in this case envelops challenges to the ALJ's findings at step two, assessment of Plaintiff's

21  subjective allegations, and assessment of medical opinion evidence, and the Court will address

22  each aspect of Plaintiff's challenge in turn.

23  *//*

ORDER - 3

1

        *1.      Personality Disorder*

2

        First, Plaintiff argues that the ALJ erred in failing to acknowledge his diagnosed

3

personality disorder at step two and failed to consider any of the limitations it caused in

4

subsequent parts of the decision.

5

        At step two, a claimant must make a threshold showing that her medically determinable

6

impairments significantly limit her ability to perform basic work activities. *See Bowen v.*

7

*Yuckert*, 482 U.S. 137, 145 (1987). "Basic work activities" refers to "the abilities and aptitudes

8

necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). "[T]he step two inquiry is a

9

de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273,

10

1290 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 153-54).

11

        Plaintiff was diagnosed with a personality disorder by examining psychologist Kerry

12

Bartlett, Ph.D. *See* AR at 394. Dr. Bartlett indicated that Plaintiff's personality disorder was

13

"provisionally assessed as reflecting a mixed Passive and Avoidance characterological features."

14

*Id.* Relying on Dr. Bartlett's diagnosis, a vocational rehabilitation specialist, Georgia Quaccia,

15

found that Plaintiff's personality disorder led to "[p]ervasive and inflexible personality traits that

16

have not been amenable to change over time. [Plaintiff] has not been able to advocate for himself

17

in getting the mental health and medical treatment needed to address his barriers." *Id.* at 401. The

18

ALJ did not mention a personality disorder diagnosis at either step two or at any subsequent step

19

in the decision.

20

        Even assuming the ALJ should have included a personality disorder as a severe

21

impairment at step two, the ALJ's failure to do so is, at most, harmless error because the ALJ did

22

not deny Plaintiff's application at step two, and explicitly discussed Plaintiff's lack of coping

23

skills, which Dr. Bartlett connected with Plaintiff's personality disorder. *See* AR at 393-34. The

ALJ noted that Dr. Bartlett found Plaintiff's coping skills to be "fundamentally-compromised" such that he was expected to "remain fragile and compromised in his ability to cope with normal life challenges and stressors on an extended basis" (*id*. at 394), and the ALJ assigned little weight to this opinion. *Id*. at 25. To the extent that Dr. Bartlett and Ms. Quaccia expressed the opinion that Plaintiff was unable to work based on his combination of impairments, the ALJ indicated that this opinion does "not reflect specific vocational restrictions and is not a medical opinion[,]" but was instead an opinion on an issue reserved to the Commissioner. *Id*. at 25-26. Plaintiff has not argued or shown that this reasoning was erroneous. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("Here, the ALJ found that Dr. Zipperman's descriptions of Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful because they failed to specify Ford's functional limits. Therefore, the ALJ could reasonably conclude these characterizations were inadequate for determining RFC.").

Because the ALJ's inquiry did not end at step two, and because the ALJ explicitly considered the limitations flowing from Plaintiff's personality disorder diagnosis, any error related to the ALJ's failure to include Plaintiff's personality disorder as a step-two impairment is harmless. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

2.      *Plaintiff's Subjective Symptom Testimony*

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). In this case, the ALJ noted that Plaintiff alleged disabling mental limitations flowing from his mental conditions, but the ALJ discounted those allegations in light of normal mental status examination findings; treatment notes contradicting Plaintiff's allegation of difficulty with self-care, specifically mentioning that Plaintiff was observed to have normal grooming; and

1   evidence of some improvement with "very conservative treatment," alongside Plaintiff's refusal

2   to treat his mental conditions with medication, due to his uncorroborated allegation that

3   medications made his conditions worse. AR at 23-24. Plaintiff disputes these findings, and also

4   argues that the ALJ's assessment of his allegations is tainted by the ALJ's misunderstanding of

5   the nature of somatic symptom disorder.[3]

6          As to the normal mental status examination findings as to memory, mood, speech,

7   behavior, and thought process: Plaintiff argues that these have no bearing on his alleged mental

8   limitations because he did not allege any cognitive problems that would be revealed upon mental

9   status examination. (Dkt. # 8 at 11.) Plaintiff, did, however, allege problems with memory and

10  focus (AR at 55, 222, 224), and thus normal memory and concentration findings contradict those

11  allegations. *See id.* at 322, 332, 388, 392, 441. This is a clear and convincing reason to discount

12  Plaintiff's subjective allegations. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d

13  1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for

14  rejecting the claimant's subjective testimony.").

15         The ALJ also pointed to evidence showing that Plaintiff was observed by providers to

16  have normal grooming/hygiene, which contradicts his allegations of problems bathing. AR at 23

17  (citing *id*. at 269, 322, 391, 451). Plaintiff argues that the "more reasonable" interpretation of this

18  evidence is that he is capable of appropriate grooming when going to a medical appointment

19

20  ──────────────

21  [3] Plaintiff contends that the ALJ's focus on the lack of objective support for chemical sensitivity led the
    ALJ to "disregard[] the bulk of Plaintiff's testimony of significant mental limitations from stress and
    anxiety brought on by fear of exposure to chemicals or scents." (Dkt. # 8 at 14.) This argument is not

22  accurate: the ALJ provided reasons to discount Plaintiff's testimony describing mental limitations
    unrelated to the lack of objective support for chemical sensitivity, such as Plaintiff's normal mental status
    examination findings, and inconsistencies as to Plaintiff's grooming and activities. Even if, as explained

23  *infra*, the ALJ erred in suggesting that the lack of objective support for chemical sensitivity undermined
    Plaintiff's allegation of disabling mental limitations, the ALJ provided other independent reasons to
    discount those allegations, as discussed here.

ORDER - 6

(dkt. # 8 at 17), but this argument does not establish error in the ALJ's decision because he has not shown that the ALJ's interpretation was unreasonable. Considering Plaintiff's allegations of extreme lack of self-care (*e.g.* AR at 54 (Plaintiff's hearing testimony that it had been more than two months since he last bathed)), the observations of Plaintiff's normal attire and grooming reasonably constitute a contradiction that supports the ALJ's interpretation.

The ALJ went on to point to evidence that Plaintiff reported improvement in his mood, stress, anxiety, depression, and daily functioning with therapy, and with the use of coping mechanisms such as lavender essential oil, watching YouTube, listening to music, playing video games, and talking to his nephews. AR at 24 (citing *id.* at 353, 368, 466, 506, 591-682). The ALJ found that Plaintiff's report of some improvement with this very conservative treatment, combined with his failure to pursue more extensive treatment for his physical and mental health conditions, undermined his allegations of disabling limitations. *Id.* at 24. Specifically, the ALJ noted that Plaintiff declined medications to treat his depression and anxiety, contending that such medications had made his symptoms worse in the past, with no evidence in the record to support that assertion. *Id.* This is a clear and convincing reason to discount Plaintiff's allegations of disabling mental limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ permissibly inferred that the claimant's pain was not as disabling as alleged "in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects"); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level

imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

Plaintiff argues that in finding that he had not sought sufficient treatment for his conditions, the ALJ failed to appreciate that his course of action may have been influenced by his personality disorder. (Dkt. # 10 at 2.) Indeed, Ms. Quaccia opined in 2015 that because of his personality disorder, Plaintiff had not been able to advocate for himself to get the treatment he needed. AR at 401. Since that time, however, Plaintiff sought therapy for his mental conditions and reported some improvement, as noted by the ALJ. *See id.* at 336-58, 451-682. Plaintiff's presentation of an alternate interpretation of the record does not establish error in the ALJ's decision, particularly here where Plaintiff's argument does not account for evidence that Plaintiff sought treatment despite his personality disorder.

Plaintiff also challenges the ALJ's findings at step three regarding his social functioning and daily activities, contending that the ALJ's analysis was not sufficient to show that his functioning in these areas undermined his allegations. (Dkt. # 8 at 14-16.) To the extent that the ALJ did assess Plaintiff's testimony within the step-three findings (AR at 18-20), those contradictions support the ALJ's assessment of Plaintiff's subjective allegations, even if they do not demonstrate the existence of transferable work skills, because a contradiction between the evidence and a claimant's subjective allegations is a sufficient basis for discounting the claimant's testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills"). For example, the ALJ contrasted Plaintiff's allegations of social problems with evidence of his normal interactions with providers, family, and friends, and also found inconsistency between Plaintiff's allegations of concentration problems with his ability to program computers for two hours at a time. AR at 18-19. The ALJ reasonably

1    interpreted the evidence to find these activities to be inconsistent with Plaintiff's allegations and

2    did not err in discounting Plaintiff's allegations on this basis.

3          The ALJ's decision also emphasizes that the record does not establish the existence of

4    any chemical sensitivity impairment, and that Plaintiff's providers opined that his fears of

5    contamination and exposure were irrational and dysfunctional. AR at 23. This finding is

6    supported by the record but does not explain why Plaintiff's allegations are not reliable, because,

7    as the ALJ himself found, Plaintiff has somatic symptom disorder. Even if he does not have any

8    chemical sensitivity, Plaintiff's somatic symptom disorder would not necessarily be any less

9    mentally limiting based on that fact. *See, e.g.*, *id*. at 386. Thus, this section of the ALJ's decision

10   appears to reflect a misapprehension of the implication of Plaintiff's somatic symptom disorder

11   diagnosis. Nonetheless, the ALJ provided other clear and convincing reasons to discount

12   Plaintiff's alleged mental limitations, however, which render harmless any error in this portion of

13   the ALJ's reasoning.[4] *See Carmickle*, 533 F.3d at 1162-63.

### 3.   *Medical Opinion Evidence*

15         In addition to the arguments addressed *supra* regarding the opinions of Dr. Bartlett and

16   Ms. Quaccia, Plaintiff argues that the ALJ erred in discounting the opinions of examining

17   psychologist T.C. Portman, Ph.D. Where contradicted, a treating or examining doctor's opinion

18   may not be rejected without "'specific and legitimate reasons' supported by substantial evidence

19   in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (quoting

20   *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

21         Dr. Portman examined Plaintiff in May 2016 and March 2018, and on both occasions

22

23   [4] Additionally, as acknowledged by Plaintiff (dkt. # 8 at 13), the ALJ provided adequate reasons to
     discount Plaintiff's alleged physical limitations, and that reasoning also supports the ALJ's assessment of
     Plaintiff's mental allegations. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1225 (9th Cir.
     2010).

1  completed DSHS form opinions describing Plaintiff's symptoms and limitations. AR at 384-88,

2  447-50. The ALJ summarized Dr. Portman's opinion describing many workplace limitations,

3  some severe, and explained that he discounted the opinions based on Dr. Portman's lack of

4  access to the longitudinal record and reliance on Plaintiff's self-report. *Id*. at 24-25. The ALJ also

5  found that the limitations mentioned in Dr. Portman's opinions were inconsistent with the mental

6  status examinations he performed: for example, Dr. Portman's 2018 opinion described more

7  serious limitations when compared with the 2016 opinion, yet Dr. Portman's 2018 mental status

8  examination was entirely normal and reflected an improvement over the 2016 mental status

9  examination. *Id*. at 384-88, 447-50.

10        Dr. Portman's lack of access to the longitudinal record is a valid reason to discount his

11  opinions. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Plaintiff argues that the ALJ erred in

12  focusing on the lack of support in the longitudinal record for Plaintiff's self-reported chemical

13  sensitivity (dkt. # 8 at 8-9), but the ALJ did not reference this aspect of the longitudinal record

14  with respect to Dr. Portman's opinions. Instead, the ALJ focused on the normal objective

15  findings as to normal mood, behavior, memory, concentration, speech, and thought processes in

16  the overall record (AR at 25), and Plaintiff has not shown that the ALJ erred in discounting Dr.

17  Portman's opinions based on inconsistency between those normal findings and the limitations

18  described by Dr. Portman.

19        Although Plaintiff also disputes whether normal mental status examination findings in

20  fact contradict Dr. Portman's conclusions (dkt. # 8 at 11), he overlooks that Dr. Portman opined,

21  *inter alia*, that Plaintiff had marked limitations in his ability to perform detailed tasks (AR at

22  387), severe limitations in his ability to maintain appropriate behavior in the workplace (*id*. at

23  387), and marked limitations in his ability to make simple work-related decisions (*id*. at 449),

and yet also found that he had normal memory, behavior, and judgment (*id*. at 388, 450). These examination findings are reasonably inconsistent with the limitations indicated by Dr. Portman, and the ALJ did not err in discounting the opinions based on those internal inconsistencies. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (ALJ appropriately considers internal inconsistencies within and between physicians' reports); *Bayliss*, 427 F.3d at 1216 (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province").

Because the ALJ provided legally valid reasons to discount Dr. Portman's opinions, the Court affirms the ALJ's assessment of Dr. Portman's opinions.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

Dated this 3rd day of August, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge